We'll now hear 19-4055, Marcantel v. Michael & Sonja Saltman Family Trust. Uh, Mr., am I pronouncing your name correctly, Guymon? Yes, you are. Thank you. You may proceed. Thank you, your honors. It's a pleasure to appear before you. This is my first time before the 10th circuit, and this is an honor. May it please the court. My name is Paxton Guymon. I represent the appellant, Mr. Kurt Marcantel. He was the plaintiff in the proceedings below. As you'll recall from the briefs, this is the case about the undisclosed sewer easement. My client purchased land in Park City, Utah. It is undisputed that when he purchased the land, he did not know about a sewer easement that ran right through the middle of one of the lots. Um, in the proceedings below, just a few weeks before trial was scheduled to begin, the district court granted the defendant's motion for summary judgment, dismissing all of my client's claims. We are appealing the dismissal of two of those claims, the claim for breach of contract and the claim for fraudulent nondisclosure. It's interesting to note that in making its ruling, dismissing my client's claims, the district court revealed in open court that it was quote uncomfortable with the result. The quote is found on page 79 of the hearing transcript where the judge said, the court rules that the legal theories of the plaintiff cannot survive, even though I am uncomfortable with the result. Well, today we have the chance to fix that. We've raised numerous issues for appeal on our briefs. There's no way I could go through all of those in the time allotted. I think our opening brief does a fine job of clearly laying out all the grounds for reversal. In the time allotted, I want to focus on two claims, the breach of contract claim and the claim for fraudulent nondisclosure. Now the breach of contract claim is based on two contracts. The first is the realistic purchase. I thought those were the only two issues really raised in your brief. Are you able to appeal to those two issues? They are the two issues, but I'm not going to talk about all the seven issues that are itemized. I'm going to focus on really just the heart of these two issues. In the breach of contract claim, we have a standard purchase contract for land in Utah. And there are two provisions that play in that. The first one is section 7F. This is part of the seller's disclosures. A copy of the purchase contract is attached as exhibit one in our opening brief, if you wanted to follow along. But the seller's disclosure contract requires the seller to provide to the buyer a list of items. The very last item is a blank item. It says other with a blank line. And what my client typed in as the buyer was the following words, survey, if one has been done. So that incorporated into this contract, a contractual requirement to provide to my client, the buyer, a copy of the survey. If one has been done. Do we resolve that any ambiguity against your client because he did draft that language? Well, I suppose you could, if you think there's ambiguity. Um, the problem in this case, your honor, is that the court and the district court went on to impose requirements that don't exist. The district court essentially said, well, what that means is a survey. If one has been commissioned or paid for by the sellers. That language isn't there. It simply says, is there a survey of so provided, but I think it's more important to read that section of the contract in connection with the seller's property disclosure condition form, because there again, in section six of the seller's property condition form, it says, this is paragraph six E by the way. Are you aware I'm six, six D are you aware of any surveys that have prepared for the property? It doesn't say in your possession or control. It doesn't say that you've paid for it. Doesn't say that you personally. Um, commissioned. It just says, are you aware of any surveys that have been prepared for the property and the sellers check the box? No, that is undisputably the wrong answer. And here's how we know that if you look at the evidence in this case, shortly after the sellers, the Saltman trust purchased this property in 2007, they filed an application with the local sewer district to try to relocate that sewer line. They also filed four applications with the park city planning department for development approvals. And then each of those four applications, a copy of the survey was included. Here's the relevant. Part of the evidence presenting to part of the applications. And one of those applications was specifically to relocate the sewer line. Well, there were two sets of applications. There were the applications filed with the park city planning department for subdivision plat approval. And then there was the separate application filed with the sewer district to relocate the sewer line. The record evidence is clear that on those applications, Mr. Saltman signed them. They were not only just to relocate the sewer line, but they were to get development approvals and the survey was included. I mean, he says, you know, he's not sure when the attachments were, were added and so on. So he may not have known at least there's a, there's a possibility to know about that. But if he signed an application to relocate a sewer line, I don't see how that could be done without knowing there was a sewer easement. That's why I'm asking about that. Cause I, I didn't get that from your brief originally. Okay. Well, there was an application in evidence. It was an application to a city agency to relocate the sewer line. That is correct. And he signed that application. Yes. The, there was nothing else in that application. It couldn't have been that he thought he was focusing on something else. The application that was filed with the sewer district was to relocate the sewer line. Okay. And the application together with the applications filed with the city had a copy of the survey in it, but here's what's significant. And if you didn't catch this, it's on page 18 of our opening brief on page 18. And on the opening brief, the applications that Mr. Saltman himself signed contained a certification, a verification where he says, I have read and understood the instructions and the documents and information I have submitted are true and correct to the best of my knowledge. No, I remember that. I just don't, I didn't remember your, your mentioning an application to relocate. Okay. Let me back up a minute because I think the language in the disclosure form, um, does seem to contradict your interpretation of the contract in one respect. Okay. Because it says, are you aware of any surveys that have been prepared for the property or any adjoining property or properties you didn't read the next sentence, which is if yes, provide copy, any copy in your possession. True. I think once, once you say that it resolves what looks like, you know, any ambiguity into, well, you know, provide any survey means any in your session, because there was only three more days before closing. Anyway, don't you, don't you think it's a, it's a reasonable when you combine the disclosure statement with the contractual provision, even with what was added by your client, that they weren't asking for some absolute disclosure, but you know, if you have it, give it to us. Yeah. Isn't that a reasonable interpretation now? Okay. It is. If you have it, give it to us. But, but I don't, I don't think that absolves the defendant. I know. I agree. Yeah. Yeah. That's because they clearly had it. They filed it with the city. It may not, it might not have been in Mr. Saltman's personal home file, but the agents he had working for him, his son in law and his daughter, they had this, they filed it and it was included in the very application that Mr. Saltman signed. So it, it, it would, I don't know how you can make that leap of logic to say, okay, it's undisputed that Mr. Saltman signed the application, which contained the survey. He represented to the city that the contents in the application were true and correct, including the survey, but he didn't have the survey in his possession sufficient to disclose it to the buyer that especially on summary judgment, when reasonable inferences are supposed to be construed in favor of the non-moving party, my client. That should have been construed as an inference valid evidence to support the conclusion that Mr. Saltman had the survey. And at least he was aware of it and was aware of it. Exactly. And the engineering firm said, I can't remember whether I've done it, whether I did it in that specific case and on a specific memory, but that's my practice. Didn't get testified to that. I don't understand why it was that not presented to the judge, pointed out to the judge because I don't see how the judge said there's no evidence that they knew of it. Your honor. That's why we're here because we were shocked. And in my view, when you look at the undisputed evidence, it's just inexplicable how the trial judge could say that as a matter of law, the Saltman's didn't breach the contract when they knew about the survey and they didn't disclose it. Now that's just the survey. The key part to the survey is that the survey clearly shows the sewer easement. Okay. We also have this other language in the Rep C the purchase contract, I'm sorry, section 10.2, which is a very important requirement under Utah law because it poses a duty on the sellers, an affirmative duty on the sellers to disclose defects. And here's the, here's the key language in 10.2, the seller has to disclose in writing to the buyer defects in the property known to the seller that materially affect the value of the property that cannot be discovered by a reasonable inspection by an ordinary prudent buyer. Now that's a, that's a long sentence. And yeah, that's section 10.2 of what? Of the real estate purchase contract. So section 10.2 of the contract says this is an affirmative contractual duty. The seller has to disclose in writing to the buyer defects in the property that they know about the seller knows about that materially affect the value and cannot be discovered by a reasonable inspection of an ordinary prudent buyer. So if it's not a defect, stop right there. Right. You're absolutely right. If it's not a defect, you stop. Defects can be different things. If there's a structure, a defect could be a leak in the swimming pool, for instance, or other things like that. Physical problems. Right. But I suppose if the, if the sewer pipe were leaking, that would be a defect. But why is a perfectly intact sewer pipe a defect? Because it's, it impairs the value of the property. It's the very, very next language in that clause, your honor, defines what a defect is. It says defects in the property that materially affect the value of the property. So if there's, That doesn't define what a defect is, that restricts what kind of defects we're talking about. Well, I beg to differ slightly because here's what it goes on to say. If it materially affects the value and it cannot be discovered by a reasonable inspection by an ordinary prudent buyer, then it is a defect that has to be disclosed. We're not talking about construction defect claims. We're talking about disclosure standards so that a buyer, and here's the key. A buyer is entitled to make an informed decision about the property he or she is purchasing. Hold on. It seems to me there's an important feature of real estate transactions that you're omitting here. Okay. When you buy property, you get a title insurance. If your defects you're concerned about are defects in title, that's taken care of. And in fact, your client was apparently well served by getting insurance, but that's just done. And you count on the title company to see if there's any defect in title and to make you whole if there is one. So in that light, given that that's, maybe it's not true in that jurisdiction, but it's absolutely standard practice in my understanding to get title insurance. And given that, I would think that the natural inference is you're not talking about title defects in that provision because that's handled otherwise. If you wanted them to guarantee title perfection, then you would say you pay for the title insurance policy or stuff like that. Two points in response to that, Judge. The first is that this is a defect because it is actually a physical pipe in the property that it's underground, so you can't see it. A reasonably prudent buyer is not going to see it by inspecting the property because it's underground, so you can't see it. So it affects the developability of the property. The trial court judge was correct when saying, he said, I'm not going to rule that all easements are defects, but in this case, for this property, this particular sewer easement was a defect because it impaired the ability to develop or construct anything on top of that sewer line. So that's where the defect comes in, Your Honor, is that it's a condition that's not evident from inspection, it reduces the value of the property, and it impairs your ability to build on the land. So that's my first point. The second point is we're dealing with a very rare situation. This is a very unique situation where even though this easement, the sewer easement, had technically been recorded in the sense that it had the legal description of the property and it was filed with the county, it was not indexed correctly. It was actually indexed against a piece of property in an entirely different city block. So anybody that did a title search on this property would not find the sewer easement, and in fact, it was missed in four title reports. Here's why this is significant. The court's ruling below basically said constructive notice, constructive recording notice, trumps everything. Because this easement was recorded, albeit indexed incorrectly, albeit the fact that no title company could find it, that act of recording trumps, eviscerates the duty of a seller to disclose information that the buyer could not readily find elsewhere. That was the flaw in the ruling. Now I see I'm about out of time, so I'll just make one last statement here. The last problem with the court's ruling is that the court adopted the defendant's proposed memorandum decision without making any effort to revise that memo decision to comport with the actual findings and the actual rulings that the district court made. And our brief goes through and lists three pages worth of rulings that are contained in the memo decision that the court entered, because it was prepared by the defendants, that were not even close to being part of what the court ruled at at the hearing. That is a major problem. Thank you, counsel. Mr. Lee. Thank you, Your Honor. May it please the court and Mr. I'll just start with a discussion regarding the defect issue, because that issue covers both elements of the, both claims that are being, that are being appealed. The, the parties agree that, that only defects in the property being sold need to be disclosed, and that's both under section 10.2 of the contract and under the fraudulent nondisclosure case law. As the court pointed out, this is, there is nothing in the case law that suggests that an easement, a title, intangible title interest is a defect. In the nondisclosure context, defects are tangible things or conditions like leaks in the swimming pool or cracks in the foundation. Well, what is this then? Because it really does inhibit any ability to develop the property the way that the party may have wanted to at three residences or more. In other words, only one person knew about this that could solve it. And that is the seller. And the seller had the benefit when he bought the property of the, his seller telling him. Your client, on the other hand, just zipped the lip and kept it to himself. And now we have a buyer who wanted to do something with the property that can't do what the buyer thought the buyer could do with the property. So if it's not a defect, what is it? Well, it's a, it's a restriction on development, just like setbacks or height limitations. There's all kinds of restrictions on development of a piece of property. Intangible restrictions like easements, like whether it's disclosed or not disclosed, is not the kind of physical defect that we're talking about. Remember, the contract between the parties and frankly, the law tries to strike a balance between disclosure and sort of the as-is characteristics of the property. Where does it say physical defect? And if it doesn't say physical defect, why would we read it that way? Well, it says it in section 10.2, your honor, of the real estate purchase contract. I'm reading agrees to disclose in writing to buyer defects in the property. I don't see the word physical though. In section 10.2, and let me just find it here. It says, so section 10.2 title of that section is condition of the property. And it begins, seller acknowledges and agrees that in reference to the physical condition of the property, seller agrees to describe in writing to buyer defects in the property. So we're talking about physical conditions in the context of the real estate purchase contract. There's just no question about it. Well, the land itself is a physical object. So why isn't it a defect in the physical description? It's not a defect in the condition, in the physical condition of the property. It is at best an intangible condition of the property. So, I mean, I think the best answer to the question is no one on either side of this case found a single case across the country that characterized an easement as a defect that had to be disclosed in a real estate transaction. It just hasn't ever happened before. This is an unprecedented interpretation and it's inconsistent with section 10.2 of the agreement and it's inconsistent with every Utah case in the nondisclosure context when we're talking about a real estate transaction. How broadly did you state that? You said there are no cases involving title defects. Is that how you described it? I described it as not a single case anywhere in the country that characterizes an easement as a defect in the condition of the property that had to be disclosed either under a contract or under a common law, fraudulent nondisclosure scheme. This issue is dispositive from our perspective because, again, it permeates both of the causes of action that are being submitted for review. Wait, I'm not quite clear on the fact that you had, there's a false statement in the disclosure form, it says, do you know, are there any, well, no, it asks, are you aware of any surveys that have been prepared for the property or any adjoining property or property? The district court said there were interested in things other than the physical condition of the property, physical defects with the property. If that was intentionally false, why isn't that a breach of contract or even fraud? Sure. Well, if it were intentionally false, then it could be fraud. But the fraud claim has been dismissed and has not been appealed. If the question then becomes, is that a breach of contract? And we have two arguments there, Your Honor. One, the real estate, the seller disclosure form that included the no answer to the question, are you aware of any surveys, is, didn't create a contract duty. The contract. Question there, because right underneath the title of the document, it reads, this is a legally binding document, if not understood, consultant attorney, and then you have the seller and the buyer signing and dating it. Why is it not a contract? Well, it's part of the contract. There's no question about it. But the contractual obligation created by the seller disclosure form was to answer the question. Clearly, we did that. Well, I got the impression that the judge thought all you had to do was answer. You don't have to answer truthfully. And I'm not going to buy that. Well, if you don't answer truthfully, then you're guilty of fraud. No, you're not. Why would you ever ask somebody to answer a question, but not care whether it's true or false, whether your answer is true or false? Well, you do care. That goes by mine. You do care. Remember, if you answered false, then you haven't satisfied your contractual duty. It's like saying, build me a house. The house doesn't stand up. Well, I built the house, but I didn't have a duty to build a house that doesn't collapse. All right. Well, let's move past the debate about whether it's a breach of contract or not. And let's focus on whether the answer was truthful, Your Honor, because the district court found. That's good. The district court found it was undisputed that the answer was honest, that the trust had no knowledge of the survey. Now, let's make clear what the district court was saying, not that the judge found that they didn't know. Maybe they didn't know. The question is, was there enough evidence for a jury to find they know? And we already have the survey being attached to a request for a sewer relocation. But also, can't we rely on the general practice and course of business habit of the engineering firm that said I'd normally sit down and talk with the client about it? Isn't that enough evidence to overcome summary judgment on that point? No. No, the reason is that, first of all, there is no evidence that the survey was  correct. It's just not there. All we know is that Mr. Saltman signed the application with the then owner of the property, OTP Partners, to relocate the sewer. But we don't know what was attached to that application. Did he talk about when he signed it or when they submitted the application? We're talking about two different applications. Mr. Gaiman brought up the application to relocate the sewer, which is an application of the sewer district. There's no evidence about the content of that application in the record. The application to Park City, the pre-development application to Park City, is a different application. And all we know about that application is that Mr. Saltman signed the signature page of that application. And when he was deposed about that, he said, I don't recall seeing anything else besides the signature page. And what we do know is that the survey that eventually ended up in the Park City files in connection with that pre-development application was submitted by the architects. There's a transmittal letter by which the architects send the survey to Park City. And there's no evidence that anybody representing the trust or Mr. Saltman, who signed the application, ever saw the survey. And the evidence was to the contrary. Mr. Saltman testified unequivocally, I've never seen the survey before. Mr. Gaiman handed it to him in his deposition. Now, the question is, who did see the survey? What the evidence showed is that in 2007, Mr. Werbelow, who was Mr. Saltman's son-in-law and was working for the trust at the time, saw the survey. There's no question that that is undisputed. The question then becomes whether Mr. Werbelow's knowledge of the survey in 2007 is imputed to the trust in 2015 when it's filling out this seller disclosure form about awareness of the survey. And the court found that the answer to that question is no. And it was an agency law issue. And I know, I know Your Honor is very familiar with agency law. And the bottom line here is that the, that Mr. Marcantel was not able to demonstrate that the survey was a material fact in 2007, material to the trust, and it wasn't. I mean, nobody knew. We don't care whether they thought it was material if they knew about it. So let me ask about Mr. Elliott's deposition with the EWA. By the way, he was the architect, Your Honor. I'm sorry. Excuse me. No problem. No problem. This is my understanding that he testified his deposition that he didn't specifically recall reviewing the subdivision application packages with clients. It is his typical business practice to review property surveys with clients before filing. Now, what was he referring to there? Because I think we can, I think that's sufficient evidence for a jury to infer that he actually did in that particular case. Assuming that, does that establish what knowledge or why not? It doesn't. Because first of all, he didn't say he reviews to survey with the clients. He said he reviews the application packet. I think where his, what was the phrase he used? And we don't, we don't know what he meant by application packet because nobody asked him. Second of all, we, I did ask him, who did you talk with about the survey? And his answer was the only person I recall talking with about the survey was Jeff Warbler. He didn't talk to Mr. Saltman about it. He didn't talk to Mrs. Saltman or anybody else represent except for Jeff Warbler. And we, we, and we very carefully analyze the question of whether Mr. Warbler's knowledge of the survey, it should be imputed to the trust when it's filling out this form eight years later and the agency law analysis on that issue is, is carefully set forth in the brief. And I think that the district court got it right, that the only person who saw this survey that we know of is Jeff Warbler and his knowledge can't be imputed to the trust under the circumstances here, remember the survey wasn't important to anybody in 2007. It was easy. So when, when Elliot is testifying, he's testifying about events in 2007. That's correct. Okay. That's correct. So, you know, it's, we haven't really touched on the fraudulent nondisclosure claim at all. I mean, it's, it's, it's well briefed and I don't think we need to really get into too much about it. I think the bottom line there. Explain now with Warbler, what is Warbler, does he have any connection  Is he a beneficiary or co-trustee? He, he is not a beneficiary. He is not a trustee. He's not a member of the trust in any fashion. What he is, is Mr. Saltman's son-in-law. And, and there's no question that he was working on behalf of the trust in 2007 to sort of develop these ideas about how the property might be developed, what buildings might be built on the property. But in that context, the survey was not important to him. What was important to him is what the buildings looked like, what could fit on the property. And yes, the easement was important to him, but not the survey. And what we're talking about here in the disclosure form is the survey, not the easement. It's an important distinction. Didn't the survey show the easement? It did, but nobody knew that until this lawsuit. Nobody, nobody except perhaps the architects. Until this, because the survey just wasn't a big deal to anybody in 2015. When, when the survey was eventually brought to the fore in this lawsuit and the fact that it showed the easement, it became a big deal. But when Mr. Marcantel asked for a copy of the survey in his, in the real estate purchase contract, he didn't know the survey showed the easement. Nobody knew it because nobody had seen the survey. Except the architect. And when Mr. Werbela was asked at his deposition, did you notice that the easement is shown on the survey? He said, not at the time, not until you showed it to me right now in 2018, in my deposition, did I notice that the easement was shown on the survey. It just wasn't a big deal at the time. My time is up. Further questions from the members of the panel? Okay. Thank you, counsel. Thank you. Mr. Guyman, we'll give you another 30 seconds. Thank you very much, your honor. A couple of quick, quick points. Um, Mr. Werberlo is certainly married to a beneficiary of the trust. So if you're looking for a connection, that's where that is. Now let's be realistic about the question of why would Mr. Saltman file an application to relocate the sewer line? He would only do that because he knew the location of the sewer line and realized that it was such an impediment to building and development that he wanted to change that location. Now the survey was clearly included in the packets that were filed with Park City for the plat approvals. The record does not specifically say whether the survey was included in the application to relocate the sewer line, but that application to relocate the sewer easement is in the appendix at page 1049. You can look at it for yourself, but the clear inference there is he obviously knew the location of the sewer line because he wanted to change it. How else would you know the location of the sewer line if it wasn't by looking at the survey? That's what showed it. And my client never got the opportunity to look at the survey so that he could see the sewer line before he purchased it. So you're saying he would have had to see a survey to know where the sewer line is when he sought to relocate. No, all I'm saying is if the Saltman's had fulfilled their contractual duty to provide the survey, then he would have seen the survey and seen the sewer line. He would have seen that there's a sewer line running right through the middle. I thought you were saying Saltman must have known of the survey because he knew there was a sewer line and he wouldn't have known where the sewer line was. I am. I am. That is the clear inference. Why else would you apply to relocate it unless you knew the location and you don't know the location of the sewer line unless you see it on a survey? Because you don't see it visibly. Was that argument made to the district court? We made all of these arguments to the district court. I can't, I can't sitting here today. Tell you if I made the word for word argument, but there's no question. I made the argument that Mr. Saltman filed applications, which he signed personally that contained the survey in the application materials. And again, on the cover of those applications, he certified that he had read the contents of what was being filed. Okay. Your, your time has expired. You've gone by. Thank you. Judges get your, your drift. Unless there's a question from someone on the panel. Okay. We will now take a recess for 10 minutes.